**Electronically Filed
Intermediate Court of Appeals
CAAP-12-0000838
08-APR-2015
08:35 AM**

NO. CAAP-12-0000838

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee,
v.
ELUJINO V. ALVAREZ, III, Defendant-Appellant.

APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(CR. NO. 11-1-216)

MEMORANDUM OPINION
(By: Foley, Presiding Judge, Fujise and Ginoza, JJ.)

Defendant-Appellant Elujino V. Alvarez, III (Alvarez) appeals from a Judgment of Conviction and Sentence (Judgment) entered September 17, 2012, in the Circuit Court of the Third Circuit (circuit court).[1] Judgment was entered against Alvarez pursuant to a conditional "No Contest Plea" to Count 1, Promotion of a Dangerous Drug in the Third Degree in violation of Hawaii Revised Statutes (HRS) § 712-1243(1) (2014),[2] which preserved Alvarez's appeal of the circuit court's denial of a motion to suppress.

---

[1] The Honorable Greg K. Nakamura presided.

[2] HRS § 712-1243 provides

§712-1243 **Promoting a dangerous drug in the third degree.** (1) A person commits the offense of promoting a dangerous drug in the third degree if the person knowingly possesses any dangerous drug in any amount.
(2) Promoting a dangerous drug in the third degree is a class C felony.

On appeal, Alvarez contends the circuit erred in (1) denying his motion to suppress because there were no "specific and articulable" facts during the initial traffic stop in this case justifying its expansion into a simultaneous drug investigation; (2) denying his motion to suppress because the traffic stop was improperly extended to allow a canine team to arrive and screen the vehicle; and (3) denying his right to testify after granting his motion to reopen the suppression hearing.

For the reasons discussed below, we affirm.

## I. Background

On June 13, 2011, the State charged Alvarez by complaint with four counts: Count 1, Promoting a Dangerous Drug in the Third Degree; Count 2, Prohibited Acts Related to Drug Paraphernalia in violation of HRS § 329-43.5 (2010); Count 3, Driving Without a License (DWOL) in violation of HRS § 286-102(b) (Supp. 2011); and Count 4, Conditions of Operation and Registration of Motor Vehicles in violation of HRS § 431:10C-104(a) (2005).

On February 8, 2012, Alvarez filed a Motion to Suppress Evidence, alleging that crystal methamphetamine and drug paraphernalia discovered in his car were the fruits of an unlawful search. In denying Alvarez's motion, the circuit court made the following findings of fact (FOF):

1. On June 9, 2011 Defendant was the driver of a vehicle stopped by police because a passenger in his vehicle, Jaclyn Kama, was not wearing her seatbelt.

2. Police subsequently learned that Defendant did not have a valid driver's license.

3. Due to his lack of a driver's license, Defendant was unable to legally drive the vehicle away from the location of the traffic stop.

4. After recognizing the persons in the automobile as being known drug users, officers at the scene of the traffic stop called for a narcotic detection canine to screen the vehicle.

5. The narcotic canine screen alerted to the presence of illegal drugs within the vehicle prior to Detective Tod Bello completing the traffic citations.

6. After Officer David Reis brought the narcotic detection canine from the police station to the scene of the traffic stop, the canine screen itself took approximately ten seconds before there was an alert.

7. The initial detention of Defendant and the vehicle was only to the degree necessary to issue traffic citations.

8. The narcotic detection canine did not enter the vehicle, and sniffed only the airspace surrounding the vehicle.

[8a. No law enforcement officer asked the occupants of the stopped vehicle any questions regarding the possession or use of illegal drugs prior to the narcotic canine alert.] [3]

9. The canine screen took place during an otherwise valid detention for the traffic violations.

10. The presence of the narcotic canine was not, under the circumstances of this case, so embarrassing or intrusive as to constitute a search under the Hawaii or United States constitutions.

11. The use of the narcotic canine was not unreasonable or abusive in this case.

The circuit court then made the following conclusions of law (COL):

1. The stop of Defendant's vehicle was valid at its inception.

2. Police did not need independent reasonable suspicion to conduct the narcotic canine screen on Defendant's vehicle. State v. Snitkin, 67 Haw. 168, 171 (1984).

3. Once the narcotic canine alerted to the presence of illegal drugs within the vehicle, police had probable cause to arrest the occupants of the vehicle pending the application for a search warrant.

4. The narcotic canine screen did not constitute an unreasonable search, as generally a canine sniff around the airspace of a closed container is not a "search" under the United States and Hawaii constitutions. State v. Snitkin, 67 Haw. 168, 171 (1984).

5. Suppression is not warranted in this case.

Following the denial of his motion to suppress, Alvarez agreed to a conditional no contest plea to Count 1. In exchange for the conditional plea, the State agreed inter alia to dismiss all other counts in the complaint.[4]

## II. Discussion

On appeal, Alvarez contends the circuit court's FOFs 7, 8a, 9, 10, and 11 are clearly erroneous and COLs 2, 4, and 5 are

---

[3] The circuit court inserted FOF 8a as an addendum to the end of the "Findings of Fact and Conclusions of Law Denying Defendant's Motion to Suppress Evidence".

[4] The State also agreed to mitigate the mandatory minimum to time served, recommend that any sentence in this matter be served concurrently with any other sentence Alvarez may be serving prior to, or at the time of sentencing, including revocation of probation in Cr. No. 10-1-0097, and refrain from making any sentencing recommendations at the parole hearing.

wrong. Alvarez contends the circuit court erred in denying his motion to suppress because the initial traffic stop was improperly extended to afford time to conduct a canine drug screen in violation of Alvarez's rights under the Fourth Amendment of the United States Constitution and article 1, section 7 of the Hawai'i Constitution. Alvarez contends the prolonged stop and use of a canine drug screen constituted a separate seizure that was not reasonably related to the purpose of the traffic stop and lacked "specific and articulable facts" justifying the expansion into a simultaneous drug investigation. As a secondary argument, Alvarez seems to contend the canine drug screen was a search in and of itself. Alvarez argues the evidence gathered via a subsequent search of the car at the police station are "fruit of the poisonous tree" and inadmissible at trial. See State v. Poaipuni, 98 Hawai'i 387, 392, 49 P.3d 353, 358 (2002) ("The 'fruit of the poisonous tree' doctrine 'prohibits the use of evidence at trial which comes to light as a result of the exploitation of a previous illegal act of the police.'" (citations, quotation marks and brackets omitted)).[5]

> The circuit court's denial of the motion to suppress
>
> is reviewed *de novo* to determine whether the ruling was "right" or "wrong." The proponent of the motion to suppress has the burden of establishing, by a preponderance of the evidence, that the statements or items sought to be excluded were unlawfully secured and that his or her right to be free from unreasonable searches or seizures was violated under the fourth amendment to the United States Constitution and article I, section 7 of the Hawai'i Constitution.

State v. Estabillio, 121 Hawai'i 261, 269, 218 P.3d 749, 757 (2009) (citations and block format omitted). "Appellate review of factual determinations made by the trial court deciding

---

[5] The State's assertion that Alvarez lacks standing to object to the search of the vehicle is without merit. The Hawai'i Supreme Court has expressly approved the United States Supreme Court's view that "a defendant's ability to benefit from the exclusionary rule is a question of substantive law, rather than standing." State v. Tau'a, 98 Hawai'i 426, 435 n.19, 49 P.3d 1227, 1236 n.19 (2002) (quotation marks omitted). "Quite simply, a criminal defendant always has standing to challenge the admission of evidence introduced by the state. Whether a defendant may avail him or herself of the exclusionary rule, however, is a question of substantive search and seizure law[.]" Id. (citations, quotation marks and brackets omitted).

pretrial motions in a criminal case is governed by the clearly erroneous standard.  A finding of fact is clearly erroneous when (1) the record lacks substantial evidence to support the finding, or (2) despite substantial evidence in support of the finding, the appellate court is nonetheless left with a definite and firm conviction that a mistake has been made."  State v. Anderson, 84 Hawai'i 462, 467, 935 P.2d 1007, 1012 (1997) (citation and block format omitted).  "[C]onclusions of law are reviewed under the right/wrong standard."  Id. (citation omitted).

**A.    The Canine Screen Was Not a "Search"**

Alvarez challenges FOF 10 and COL 4 which both provide that the canine drug screen in this case was not a search.  To show the circuit court erred, it is Alvarez's burden to demonstrate by a preponderance of the evidence that the police officers infringed on protections afforded by the federal and state constitutions.  State v. Tau'a, 98 Hawai'i 426, 434-36, 49 P.3d 1227, 1235-37 (2002).  We conclude that the canine screen in this case did not constitute a search.

It is undisputed that the canine in this case only sniffed the exterior of the car.  "[A] defendant who claims the protection of the Fourth Amendment must assert that he or she has a legitimate expectation of privacy in the invaded place."  Id. at 434, 49 P.3d at 1235 (citation, internal quotation marks, and brackets omitted).  "Official conduct that does not compromise any legitimate interest in privacy is not a search subject to the Fourth Amendment."  Illinois v. Caballes, 543 U.S. 405, 408 (2005) (citation and quotation marks omitted).  Alvarez has made no substantive argument that he possessed a "legitimate expectation of privacy."  Additionally, "any interest in possessing contraband cannot be deemed 'legitimate,' and thus, governmental conduct that only reveals the possession of contraband 'compromises no legitimate privacy interest.'"  Id. (citation omitted)

In Caballes, the United States Supreme Court held that a dog sniff of the exterior of a car while the defendant was

properly seized for a traffic violation was not a search and did
not violate the defendant's Fourth Amendment rights.

> [T]he use of a well-trained narcotics-detection dog--one
> that "does not expose noncontraband items that otherwise
> would remain hidden from public view," [*United States v.
> Place*, 462 U.S. 696, 707 (1983)]--during a lawful traffic
> stop, generally does not implicate legitimate privacy
> interests.  In this case, the dog sniff was performed on the
> exterior of respondent's car while he was lawfully seized
> for a traffic violation.  Any intrusion on respondent's
> privacy expectations does not rise to the level of a
> constitutionally cognizable infringement.

Id. at 409 (emphasis added).  The Caballes court concluded that
"[a] dog sniff conducted during a concededly lawful traffic stop
that reveals no information other than the location of a
substance that no individual has any right to possess does not
violate the Fourth Amendment."  Id. at 410.

As discussed further below, the canine screen in this
case was performed during a valid traffic stop.  Moreover,
Alvarez never raised any question challenging the training of the
canine who performed the dog screen, and there was no indication
that the canine revealed or exposed any non-contraband items as
part of the screen.  Pursuant to Caballes, the canine drug sniff
was not a search under the Fourth Amendment of the United States
Constitution.

In terms of the Hawai'i Constitution, the Hawai'i
Supreme Court has held that although "the use of narcotics-
sniffing dogs does not, in and of itself, constitute an illegal
search, . . . [t]here may be situations in which the use of these
dogs will be deemed unreasonable."  State v. Groves, 65 Haw. 104,
113, 649 P.2d 366, 372 (1982).  In State v. Snitkin, 67 Haw. 168,
681 P.2d 980 (1984), the Hawai'i Supreme Court noted that "in
Groves we expressly rejected the suggestion . . . that the State
may only employ drug detection dogs when it has a prior
reasonable suspicion of criminal activity[.]" Id. at 171-72, 681
P.2d at 983.  Further, to provide overall guidance in this area,
the Snitkin court stated:

> Although in Groves we held a dog sniff is not a search, we
> also noted that we would not countenance unreasonable or
> abusive uses of narcotics dogs. 65 Haw. at 113, 649 P.2d at
> 372. We now hold that the reasonableness of the dog's use
> in the particular circumstances should be determined by
> balancing the State's interest in using the dog against the
> individual's interest in freedom from unreasonable
> government intrusions.

67 Haw. at 172, 681 P.2d at 983.

The State's interest in detecting and preventing the trafficking of drugs is a strong one. See id. at 172, 681 P.2d at 983-84. The mobility of vehicles compounds the State's interest in detecting drugs concealed within. On the other hand, Alvarez has not demonstrated a legitimate expectation of privacy in the airspace around the car. See Tauʻa, 98 Hawaiʻi at 439, 49 P.3d at 1240. The Hawaiʻi Supreme Court has noted that an individual has a "diminished" expectation of privacy in vehicles, State v. Wong, 68 Haw. 221, 223, 708 P.2d 825, 828 (1985), and has also, similar to Caballes, noted that "[n]othing of an innocent but private nature and nothing of an incriminating nature other than the narcotics being sought can be discovered through the dog's reaction to the odor of the narcotics." Groves, 65 Haw. at 113, 649 P.2d at 372 (citation and block format omitted). In Snitkin, the Hawaiʻi Supreme Court held that a canine drug screen of closed packages in a cargo holding area of a private mail carrier at the airport was not a search. 67 Haw. at 171-72, 681 P.2d at 983-84.

In the instant case, the canine walked around the outside of the vehicle that Alvarez was operating and, according to the undisputed finding by the circuit court, the "canine screen itself took approximately ten seconds before there was an alert." The manner of the canine screen in this case did not unreasonably intrude into Alvarez's privacy interests. The canine drug screen of the outside of the vehicle during the valid stop in this case was not a search.

Thus, Alvarez's challenge to FOF 10 and COL 4 lacks merit.

B.      There Was No Separate Seizure of Alvarez

Alvarez argues that the police unreasonably expanded the scope of the traffic stop into a separate and simultaneous drug investigation without specific and articulable facts supporting reasonable suspicion that criminal activity was afoot. In support of his argument that the circuit court erred in denying his motion to suppress the admissibility of the drug paraphernalia and meth found in the vehicle, Alvarez relies on Estabillio.  In particular, Alvarez points to the two-part test utilized in Estabillio, which provides that "first, one must consider whether the . . . action was justified at its inception . . . second, one must determine whether the search as actually conducted was reasonably related in scope to the circumstances which justified the interference in the first place." 121 Hawaiʻi at 272-73, 218 P.3d at 760-61 (emphases, citations, internal quotation marks and brackets omitted).  For the reasons discussed below, we conclude that Estabillio is distinguishable because there was no separate search or seizure of Alvarez during the traffic stop in this case.

In Estabillio, the Hawaiʻi Supreme Court concluded that the actions of the police constituted a seizure separate and apart from the initial traffic stop.  In that case, a vice squad police officer contacted a traffic enforcement officer requesting assistance in stopping the defendant's vehicle, which had an expired registration sticker and which the vice officer believed to contain drugs.  Id. at 263, 218 P.3d at 751.  The traffic officer testified that the plan was for him to stop the vehicle and then the vice officers would appear to conduct their investigation.  Id. at 264, 218 P.3d at 752.  As planned, the defendant's vehicle was stopped for traffic violations and then the vice officer appeared on the scene.  Id.  The defendant was questioned by the vice officer about drug dealing, including the officer telling the defendant that he had information from an informant that the defendant was a cocaine dealer.  Id. at 265, 218 P.3d at 753.  Based on the defendant's refusal to consent to

8

a search of his vehicle, the vice officer requested that a canine be brought to the scene to conduct a canine screen. Id. The canine team arrived at the scene, the dog alerted to the presence of a controlled substance, and the defendant was arrested for promotion of a dangerous drug. Id.

As noted by the supreme court, there was no question that the initial stop of the vehicle in Estabillio was valid due to traffic violations. Id. at 270, 218 P.3d at 758. However, the crucial question in that case was "whether the search [or seizure] as actually conducted was reasonably related in scope to the circumstances which justified the interference in the first place[.]" Id. at 273, 218 P.3d at 761 (emphases, citation and quotation marks omitted). Significantly, the Hawai'i Supreme Court had noted that the defendant's contention on appeal was that the vice officer's investigation -- *not merely the canine screen* -- violated the defendant's constitutional rights against unreasonable searches and seizures, id. at 271-72, 218 P.3d at 759-60, and "that 'inquisitive questioning' by law enforcement can constitute an unconstitutional seizure[.]" Id. at 272, 218 P.3d at 760. The supreme court ruled that the vice officer's investigation for drugs was not reasonably related to the initial traffic stop and instead was a "separate, distinct, and unrelated investigation[]" that was not supported by reasonable suspicion. Id. at 273-74, 218 P.3d at 761-62. The supreme court concluded that the vice officer's investigation "constituted an unconstitutional seizure" and all of the evidence recovered as a result of that seizure must be suppressed. Id. at 274, 218 P.3d at 762.

Estabillio applies when the additional police action constitutes a separate search or seizure. Id. at 272-73, 218 P.3d at 761-62. As discussed above, the canine screen did not constitute a search. Moreover, the circuit court's FOF 8a, finding that no police officer questioned the vehicle occupants about possession or use of illegal drugs prior to the canine alert, was not clearly erroneous. There is substantial evidence

9

in the record to support this finding. Accordingly, this case is distinguishable from Estabillio, where the vice officer questioned the defendant about being a drug dealer, asked for consent to search the vehicle, and then called out the canine team when consent was not given. Unlike in Estabillio, the police officers in this case did not engage in questioning or a separate investigation such that there was a separate seizure. Moreover, the United States Supreme Court held that a canine sniff does "not change the character of a traffic stop that is lawful at its inception and otherwise executed in a reasonable manner," and does not constitute a separate seizure. Caballes, 543 U.S. at 408-09.

If the action does not amount to a seizure in its own right "separate and distinct from the initial seizure[,]" it appears that State v. Barros, 98 Hawai'i 337, 48 P.3d 584 (2002) would apply. Estabillio, 121 Hawai'i at 272, 218 P.3d at 760. In Barros, the supreme court held that "an officer is not prohibited from requesting a warrant check in a traffic violation stop when the check does not prolong the length of time needed to issue the citation." 98 Hawai'i at 338, 48 P.3d at 585.

To address the temporal aspect of the stop, Alvarez argues that the traffic stop was "greater in intensity than absolutely necessary under the circumstances" because the officers improperly elongated the stop to allow time for the canine to arrive. "[A] temporary investigative detention must, of necessity, be truly temporary and last no longer than is necessary to effectuate the purpose of the detention[.]" Estabillio, 121 Hawai'i at 270, 218 P.3d at 758 (citation and block format omitted); see also Caballes, 543 U.S. at 407 ("A seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission.").

Alvarez has not met his burden to demonstrate by the preponderance of the evidence that his constitutional rights have

been violated by the length of the stop. As Alvarez admits, there is "[n]o testimony in the record [which] objectively show[s] how long it would take to issue the traffic citations" in this case. Alvarez merely argues the traffic stop "appears excessive[.]" Here, the police issued two separate citations for three violations -- one citation to Alvarez for driving without a license and for driving without motor vehicle insurance; and one citation to fellow car occupant, Jaclyn Kama (Kama), for not wearing a seat belt. The testimony relied upon by Alvarez indicates it took Detective Tod Bello between 15-30 minutes to issue the three citations. Alvarez does not challenge the circuit court's FOFs 5 and 6, which collectively provide that the canine alerted to the presence of illegal drugs prior to Detective Bello completing the citations[6] and the drug screen took approximately 10 seconds to complete after the canine arrived. The evidence indicates that within 30 minutes, at most, Alvarez was under arrest for the alleged drug offenses. Alvarez has not demonstrated that the length of time for the traffic stop was unconstitutional. The circuit court's FOF 7, that the initial detention was only to the degree necessary to issue traffic citations, is not clearly erroneous.

Alvarez does not dispute that the officers had the legal right to detain Alvarez to investigate the traffic violations. The canine drug screen was completed "entirely within the time required . . . to issue the citation[s]." Barros, 98 Hawai'i at 343, 48 P.3d at 590. The evidence does not show the traffic stop was a pretext to investigate potential drug crimes. Id. The canine drug screen took place during an otherwise valid traffic stop. The circuit court's FOFs 9 and 11 are not clearly erroneous and COLs 2 and 5 are correct.

---

[6] Even if we consider this FOF challenged due to the substance of Alvarez's arguments, no evidence refutes Detective Bello's testimony that the canine alerted prior to completion of the citations. The FOF is not clearly erroneous.

The circuit court did not err in denying the motion to suppress.

C. **The Circuit Court Did Not Abuse Its Discretion In Denying Alvarez's Request to Testify at the Reopened Suppression Hearing**

Alvarez argues that the circuit court violated his constitutional right to testify by denying his request to testify during a reopened suppression hearing. We will review for abuse of discretion. See State v. Christian, 88 Hawai'i 407, 417, 967 P.2d 239, 249 (1998) (applying the abuse of discretion standard in determining whether a defendant should have been allowed to reopen the evidence at trial to testify); United States v. Hobbs, 31 F.3d 918, 923 (9th Cir. 1994) (applying abuse of discretion standard regarding reopening of suppression hearing).

> As a general matter, "permitting or disallowing a party to reopen its case for the purpose of submitting additional evidence is a matter within the discretion of the trial court" and is subject to review for abuse of discretion. *Territory v. Rutherford*, 41 Haw. 554, 558 (1957). "The trial court abuses its discretion when it clearly exceeds the bounds of reason or disregards rules or principles of law or practice to the substantial detriment of a party litigant." *State v. Furutani*, 76 Hawai'i 172, 179, 873 P.2d 51, 58 (1994) (citations and internal quotation marks omitted).

Christian, 88 Hawai'i at 417, 967 P.2d at 249 (citation and block format omitted). Given the circumstances of this case, the circuit court did not abuse its discretion in denying Alvarez's request to testify at the limited reopened suppression hearing.

The facts pertinent to the motion to suppress are as follows. Two hearings were initially held on Alvarez's motion to suppress, on April 5, 2012 and May 11, 2012, during which Alvarez called six witnesses to testify. The record also indicates that subpoenas were issued for Kama and Angelina Mamone-McKeague (Mamone-McKeague), the other occupants of the car, to appear at these hearings, but apparently Alvarez was not able to serve the subpoenas on Kama and Mamone-McKeague and they did not appear. At the close of the May 11, 2012 hearing, defense counsel conferred with Alvarez and then notified the circuit court that Alvarez would not testify. There was no colloquy by the circuit

12

court about Alvarez's decision not to testify regarding his motion to suppress.

After both parties submitted written closing arguments, the circuit court issued its proposed ruling to the parties indicating it would deny Alvarez's motion to suppress.[7] After receiving the circuit court's proposed ruling, Alvarez orally moved to reopen the evidentiary portion of the motion to allow for Kama and Mamone-McKeague to testify. Alvarez followed with a written motion to reopen the suppression hearing, which noted part of the grounds upon which the circuit court denied the motion to suppress and argued that Kama and Mamone-McKeague were now available to testify and would be able to testify in support of Alvarez's allegations. Hearings on Alvarez's motion to reopen the motion to suppress were subsequently held on July 18, 2012 and August 3, 2012, during which only the testimony of Kama and Mamone-McKeague was discussed. The circuit court granted Alvarez's motion to reopen and held the reopened hearing on August 31, 2012.

At the beginning of the reopened hearing, Alvarez's counsel confirmed for the circuit court that Kama and Mamone-McKeague were the potential witnesses. At the end of the hearing, however, Alvarez informed the circuit court that he would like to testify. Alvarez's counsel told the circuit court that it had always been Alvarez's intention to testify but that the unavailability of Kama and Mamone-McKeague made him initially decline. Counsel made an offer of proof as to Alvarez's intended testimony, which basically reiterated the testimony of the other two occupants of the car.[8] The circuit court denied Alvarez's

---

[7] The circuit court's proposed ruling denying Alvarez's motion to suppress is referenced in the record by both parties, and Alvarez's counsel expressly acknowledges having received it prior to seeking a reopening of the motion to suppress. However, it appears that the proposed ruling itself is not contained in the record on appeal.

[8] Alvarez's counsel stated

Your Honor, my understanding, speaking to him, the offer of
(continued...)

request to testify as being outside the scope of the order reopening the hearing.

Alvarez contends the circuit court erred because he has an absolute right to testify that can be exercised at any time. Alvarez notes that the circuit court did not engage in a colloquy pursuant to Tachibana v. State, 79 Hawai'i 226, 900 P.2d 1293 (1995), but Alvarez does not argue that such a colloquy is required for a suppression hearing. He also does not contend that he actually wanted to testify at the April 5, 2012 or May 11, 2012 hearings or that his decision not to testify at those hearings was not knowing, intentional and voluntary. Rather, it appears Alvarez references Tachibana to suggest that his initial decision not to testify was not final. Tachibana involved a defendant's right to testify at trial and did not address the right to testify at a pretrial suppression hearing. See id., 79 Hawai'i at 236-37, 900 P.2d at 1303-04 (holding that trial courts must advise criminal defendants of their right to testify and obtain an on-the-record waiver of that right, ideally to be done immediately prior to the close of the defendant's case at trial);[9] State v. Lewis, 94 Haw. 292, 297, 12 P.3d 1233, 1238 (2000) (mandating that trial courts also provide certain advisements to criminal defendants prior to the start of trial

_____

[8] (...continued)
> proof would be Mister, um, Alvarez would testify that he was the driver when the vehicle was pulled over. That the vehicle was pulled over for, uh, approximately thirty minutes before, um, any, uh, drug screening. An arrest was made for him that, in his experience, uh, that time was far in excess of what is normally, um, used to, uh, issue a ticket. He would also state that, um, Officer Bello, he believes, did engage, um, him in conversation, uh, regarding, uh, didn't he know that Jaclyn Kama, uh, I guess the whole vehicle, but he felt it was addressed to him, was why was [Kama] out, her husband had just been arrested for two eight balls. He would also testify as to specific acts that occurred that, uh, buttress his belief as to the length of time that this took place.

[9] A defendant's constitutional right to testify at trial is based on the fifth, sixth, and fourteenth amendments to the United States Constitution and article I, sections 5, 10, and 14 of the Hawai'i Constitution. See Tachibana, 79 Hawai'i at 231, 900 P.2d at 1298.

regarding their right to testify or not to testify). Further, neither of the cases cited by Alvarez, State v. Silva, 78 Hawai'i 115, 890 P.2d 702 (App. 1995), *abrogated by* Tachibana, 79 Hawai'i 226, 900 P.2d 1293, and Rock v. Arkansas, 483 U.S. 44 (1987), involves the right to testify at a pretrial suppression hearing. See Silva, 78 Hawai'i at 708 and n.5, 890 P.2d at 121 and n.5; Rock, 483 U.S. at 48, 51 n.9.

Given the circumstances of this case, and because Alvarez presents no argument that the lack of a Tachibana colloquy during the April 5, 2012 or May 11, 2012 suppression hearings deprived him of his right to testify, we need not decide if Alvarez's right to testify at those initial suppression hearings was violated or whether the colloquy requirement in Tachibana should be extended to pretrial suppression hearings. Rather, as noted, Alvarez's contention is that he had an absolute right to testify at the reopened hearing.

With regard to reopened suppression hearings, two separate jurisdictions have held that a trial court's refusal to allow a defendant to reverse field and request to testify during a reopened hearing is not a violation of a defendant's constitutional rights. In United States v. Childress, 721 F.2d 1148 (8th Cir. 1982), the United States Court of Appeals, Eighth Circuit, held that a trial court did not err in denying a motion to reopen a suppression hearing solely to allow defendant to testify where defendant failed to establish good cause to obtain relief from his prior decision not to testify. 721 F.2d at 1151. The court noted *inter alia* that the defendant had a full opportunity to examine the witnesses testifying, that the defendant had already requested a continuance to decide whether to put on additional evidence, and the defendant identified no new information that would have aided his theory for suppression. Id.

Similarly, in People v. Peterson, 777 N.Y.S. 2d 48 (App. Div. 2004), the New York Supreme Court, Appellate Division, held that the trial court's denial of the defendant's request to

15

testify at a reopened suppression hearing did not violate the defendant's constitutional right to testify. Id. at 49. The court reasoned that the defendant had declined the opportunity to testify at the original hearing, the reopened hearing was for the limited purpose of allowing counsel to utilize previously unavailable grand jury testimony, and the defendant's proposed testimony was not related to the specific limited reason for reopening the hearing and did not provide any additional pertinent facts that could not have been presented during the original hearing. Id. Peterson and Childress are persuasive and appear to be consistent with Hawai'i case law recognizing that the right to testify is fundamental, but can be limited for legitimate reasons.

The Hawai'i Supreme Court has stated that "[t]he right to a fair hearing also extends to pretrial suppression hearings. . . . [T]he due process clause requires that a defendant be afforded a fair hearing and a reliable determination on the issue of admissibility." State v. Pulse, 83 Hawai'i 229, 246, 925 P.2d 797, 814 (1996) (citations, internal quotation marks, and brackets omitted). "Few rights are more fundamental than that of an accused to present witnesses in his own defense." Id. (citation and quotation marks omitted). Yet, this right is not absolute as at times it can be limited to accommodate other legitimate interests. Id.

A motion to suppress is rife with strategic decisions. Although the ability to testify on one's own behalf during a suppression hearing may be important to establishing the grounds to support a motion to suppress, there may be strategic reasons not to testify and thus we do not agree with Alvarez's contention that a defendant has an absolute right to testify at any time during the suppression proceedings, particularly after initially waiving the right to testify and after the trial court has issued its proposed ruling. In the circumstances of a trial, the Hawai'i Supreme Court imposed a high standard, requiring that a defendant show manifest injustice, when the defendant sought to

withdraw his waiver of his right to testify after the jury had returned a verdict against him. Christian, 88 Hawai'i at 426-27, 967 P.2d at 258-59. The court noted that the higher standard was required because

> [w]ere such not the case, defendants such as Christian would have every incentive to seek "a second bite at the apple" by waiving their constitutional right to testify in their own behalf, remaining silent during the evidentiary phase of their trials, hoping for the best, and seeking to retry their cases in the event of an undesirable outcome by claiming a resurrected desire to enlighten the trier of fact with their version of the material events.

Id. at 427 n.15, 967 P.2d at 259 n.15.

Similar concerns appear in this case. Here, Alvarez chose not to testify at the April 5, 2012 and May 11, 2012 suppression hearings, then upon learning that the circuit court would deny his motion to suppress, he moved for a reopened hearing, but only to receive the testimony of Kama and Mamone-McKeague. Alvarez's request to reopen the hearing was narrow, and the circuit court granted the motion to receive the pertinent testimony offered by the two passengers of the vehicle. It was not until after Kama and Mamone-McKeague had testified and at the end of the reopened hearing that the defense moved to have Alvarez testify. Upon receiving the offer of proof, the circuit court determined the proffered testimony to be outside the scope of the reopening and declined further reopening of the hearing.

In these circumstances, the circuit court did not abuse its discretion. Alvarez has never claimed, below or on appeal, that his decision not to testify in the initial hearings on April 5, 2012 and May 11, 2012 was not knowing, intentional and voluntary; he has never claimed that his attorney usurped his right to testify in any way; and he offers no compelling reason why he could not have testified during the April 5, 2012 or May 11, 2012 hearings, especially considering his burden of proof in support of his motion. See Pulse, 83 Hawai'i at 246, 925 P.2d at 814 ("[A] defendant's right to present relevant evidence [during a suppression hearing] is not without limitation and may, in appropriate cases, bow to accommodate other legitimate

17

interests in the criminal trial process." (citation and quotation marks omitted)); Hawaii Rules of Evidence (HRE) Rule 611 ("The court shall exercise reasonable control over the mode and order of . . . presenting evidence so as to . . . (2) avoid needless consumption of time[.]"); HRE Rule 403 ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by . . . needless presentation of cumulative evidence."). A review of the record shows that the circuit court afforded Alvarez a fair hearing on his motion to suppress and a reliable determination on the issue of admissibility. Pulse, 83 Hawai'i at 246, 925 P.2d at 814 (citation, quotation marks and bracket omitted).

**V. Conclusion**

For the foregoing reasons, we affirm the Judgment of Conviction and Sentence entered September 17, 2012, in the Circuit Court of the Third Circuit.

DATED: Honolulu, Hawai'i, April 8, 2015.

On the briefs:

William B. Heflin
Brian J. De Lima
(Crudele & De Lima)
for Defendant-Appellant

Jason M. Skier
Deputy Prosecuting Attorney
County of Hawai'i
for Plaintiff-Appellee

Presiding Judge

Associate Judge

Associate Judge